**Charles Harold HUGHES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–00935–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 1998.

Rehearing Overruled March 4, 1998.

---

Paul Johnson, Mary Cudd Peter, Angleton, for Appellant.

Jerome Aldrich, David Bosserman, Angleton, for Appellee.

Before SCHNEIDER, C.J., and NUCHIA and HEDGES, JJ.

## OPINION

NUCHIA, Justice.

Appellant was convicted by a jury of aggravated robbery. The jury assessed punishment at life in prison and a $10,000 fine. We affirm.

## BACKGROUND

Several days before Christmas in 1993, the Palmer home was invaded and the family was robbed by appellant and several other men bearing shotguns. The men gathered up the family in the den, and told everyone to lie on the ground and not to move. They then ransacked the entire house. During the robbery, Mrs. Palmer attempted to solace her panicked son who was next to her. Appellant shot Mrs. Palmer in the head with a shotgun, destroying the right side of her face.

## DISCUSSION

### Shackle

In his first three points of error, appellant contends that the trial court erred in shackling him during the course of the trial.

■■ When a defendant is viewed by the jury in handcuffs or a shackle, his presumption of innocence is seriously infringed. *Cooks v. State,* 844 S.W.2d 697, 722 (Tex. Crim.App.1992); *Long v. State,* 823 S.W.2d 259, 282 (Tex.Crim.App.1991). Generally, shackling is only permitted in rare circumstances, and then only where the record specifically details the grounds for the action. *See, e.g., Long,* 823 S.W.2d at 282; *Marquez v. State,* 725 S.W.2d 217, 228 (Tex.Crim.App. 1987).

■■ Nonetheless, on appeal the role of this Court is to determine whether the trial court abused its discretion in authorizing the restraint. *Cooks,* 844 S.W.2d at 722; *Long,* 823 S.W.2d at 282. Even if an abuse of discretion exists, reversal is not called for if the abuse was harmless. *Long,* 823 S.W.2d at 283. Only where there is evidence that the jury actually saw the shackles can reversible error exist. *Id.; Cooks,* 844 S.W.2d at 722. In the absence of evidence that the jury actually saw the shackle, the defendant was not harmed or prejudiced. *Cooks,* 844 S.W.2d at 722; *Long,* 823 S.W.2d at 283.

■■ In this case, there is absolutely no evidence that the jury could see the shackle. In fact, the record indicates that the trial judge went to great lengths to make sure the jury could not see the shackle. The trial judge sat in various areas of the courtroom and stated on the record that he could not see the shackle. He placed trash cans and partitions to block the jury's view of the shackle. He ordered the desks moved ten feet closer to the bar to obscure the view of appellant's legs. The judge also ordered that pictures be taken from the jury box and audience areas as evidence that the jury could not see the shackle, and out of the jury's presence, had the photographer testify on the record. Appellant's counsel concedes that "[n]o evidence is on the record as to whether the shackles could be seen as the jury or any person entered the courtroom." We need not decide whether the trial court abused its discretion, because even if it had, there would be no grounds for reversal. *Cooks,* 844 S.W.2d at 722; *Long,* 823 S.W.2d at 283. We overrule points of error one and three.

■■ In his second point of error, appellant conclusorily asserts that the shackling also violated his Fifth, Sixth, and Fourteenth Amendment rights under the federal constitution. Appellant does not separately brief, cite any authority, or refer to the alleged federal violations in his combined handling of his first three points of error. Appellant has waived any error. Tex.R.App. P. 38.1(h); *see also Etheridge v. State,* 903 S.W.2d 1, 21 n. 1 (Tex.Crim.App.1994) (where appellant generically alleges his error as a violation of both state and federal law and does not argue each authority separately, court should only

address the alleged error argued and consider the rest as inadequately briefed and waived); *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991) (same).

We overrule appellant's second point of error.

### *Batson* Challenge

■ In his fourth point of error, appellant contends that the trial court erred in not reinstating several venire persons who were struck by the State. A *Batson* inquiry entails a three-step process. First, the opponent of a peremptory challenge must make out a prima facie case of racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995); *Williams v. State*, 937 S.W.2d 479, 485 (Tex. Crim.App.1996). Then, the proponent of the strike must come forward with a race-neutral reason for the challenge. *Purkett*, 514 U.S. at 767–768, 115 S.Ct. at 1770; *Williams*, 937 S.W.2d at 485. Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1770; *Williams*, 937 S.W.2d at 485.

It is undisputed that appellant made a sufficient prima facie showing—he is black, and all three black venire persons, as well as a Hispanic venire person, were removed. It is also undisputed that the State provided racially neutral reasons for the venire persons removal—the venire persons removed either had a family member who had been arrested or was in prison. *Chambers v. State*, 866 S.W.2d 9, 24 (Tex.Crim.App.1993) (family member in prison is a sufficient race neutral reason); *Spears v. State*, 902 S.W.2d 512, 518 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd) (same).

■ We review the record of the *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling. *Cantu v. State*, 842 S.W.2d 667, 689 (Tex.Crim.App.1992). We will not disturb a trial court's ruling that the State exercised its strikes in a racially neutral manner unless such ruling is clearly erroneous. *Id.* On review, we must accord great deference to the trial judge who was present to assess the credibility of the prosecutor and his proffered explanations. *Salazar v. State*, 818 S.W.2d 405, 408 (Tex.Crim.App.1991).

■ Additionally, the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1770–71. To carry this burden, appellant may offer several types of evidence, one of which is that there was disparate treatment of the venire persons, *i.e.*, persons with the same or similar characteristics as the challenged venire person were not struck. *Harper v. State*, 930 S.W.2d 625, 635 (Tex.App.—Houston [1st Dist.] 1996, no pet.); *Gardner v. State*, 782 S.W.2d 541, 544 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (citing *Keeton v. State*, 749 S.W.2d 861, 868 (Tex.Crim.App.1988)).

Appellant argues that he has shown disparate treatment, *i.e.*, that the State struck minority venire persons who had family who had been arrested or were in prison, but did not strike two similarly situated white venire persons. In his brief, appellant asserts that venire persons 17 and 40 had relatives accused of a crime. The jury list shows venire person 17 to be Cynthia Michelle Love and venire person 40 to be Dee Raymond Sanders.

With regard to Cynthia Love, there is no indication in the record that she had a family member that had been arrested or was in prison. Therefore, this venire person could not assist appellant in proving disparate treatment.

■ The record shows, however, that Dee Sanders did say he had a cousin who had been arrested for burglary. In responding to appellant's claim of pretext, the prosecutor stated that his notes did not reflect that Sanders had a relative who had been arrested for burglary. The prosecutor then stated that if the record did reflect that Sanders had a relative arrested, he would offer to strike Sanders because he had one strike remaining. The trial judge denied the prosecutor's request to strike Sanders because he felt this action was unnecessary unless jurors had been improperly removed. The sole is-

sue before this Court is whether the trial court erred in not finding pretext.

■ Disparate treatment cannot automatically be imputed in every situation where one of the State's reasons for striking a venire person would technically apply to another venire person whom the State found acceptable. *Cantu,* 842 S.W.2d at 689; *Spears v. State,* 902 S.W.2d 512, 519 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). For example, where the only evidence of discriminatory intent is that the party striking the venire person made an honest mistake in recalling what the venire person said, pretext is not shown. *See Hurd v. Pittsburg State Univ.,* 892 F.Supp. 245, 248–49 (D.Kan. 1995), *aff'd,* 109 F.3d 1540, 1546–48 (10th Cir.1997) (mere mistaken belief is insufficient to prove discriminatory intent and pretext); *see also Salinas v. State,* 888 S.W.2d 93, 98 (Tex.App.—Corpus Christi 1994, pet. ref'd) ("Even if the prosecutor was mistaken in some of these beliefs, the judge could still conclude that the strike was race-neutral because the prosecutor based his peremptory strike on an honest belief."); *Jack v. State,* 867 S.W.2d 942, 947 (Tex.App.—Beaumont 1993, no pet.) ("Even if the prosecutor was mistaken, the trial judge could still conclude that the strike was race neutral because the prosecutor based his peremptory strike on an honest belief.").

The trial judge had the opportunity to determine the prosecutor's sincerity and was able to observe the prosecutor's demeanor at length. Under the facts of this case, appellant has not met his burden of showing that this error was a pretext for race discrimination. We hold the trial court's ruling in regard to the State's use of peremptory challenges was not clearly erroneous.

We overrule point of error number four.

### Line-Up Tampering

Appellant next complains in points of error five, six, and seven that the trial court erred in allowing the testimony of E.D. Worsham and John Breaux. John Breaux is a prisoner who appellant asked to "act suspicious" while he participated in appellant's line-up. E.D. Worsham is a police officer who overheard

appellant tell other people in the line-up that he would give them money if they would act suspicious.

■ In his fifth and sixth points of error, appellant generally asserts that the introduction of this testimony was a violation of both the Texas Constitution and the United States Constitution. However, because appellant does not argue each authority separately, we will address the alleged error only on the law on which appellant has based his argument, and consider the rest as inadequately briefed and therefore waived. TEX.R.APP. P. 38.1(h); *Etheridge,* 903 S.W.2d at 21 n. 1; *Heitman,* 815 S.W.2d at 690 n. 23.

The only argument appellant has briefed relates to TEX.R.CRIM. EVID. 404(b), and is the basis of point of error seven. Accordingly, we overrule points of error five and six.

In point of error seven, appellant complains that the introduction of the testimony of Worsham and Breaux violated the notice requirement of rule 404(b) of the Rules of Criminal Evidence. Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ***provided, upon timely request by the accused,*** reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

TEX.R.CRIM. EVID. 404(b) (emphasis added).

■ In this case, appellant did not file a rule 404(b) notice that would trigger the reasonable notice requirement. As such, the State was not required to give appellant notice of its intent to introduce extraneous offenses, and the trial court did not err in permitting their introduction. *Espinosa v. State,* 853 S.W.2d 36, 39 (Tex.Crim.App. 1993).

■ In appellant's supplemental brief, as well as in oral argument before this Court, appellant's counsel argues that a rule 404(b)

motion was filed in a previously dismissed case that arose out of the same transaction. This motion is insufficient for two reasons. First, it was filed in the previously dismissed case, and appellant did not file a motion to adopt the pleadings from that case. *See Hanie v. State,* 820 S.W.2d 7, 8–9 (Tex. App.—Dallas 1991, pet. dism'd w.o.j.) (jury waivers filed in previously dismissed case are ineffective in subsequent case absent court granting motion to adopt the pleadings). Second, even if that motion was sufficient, appellant's argument would still fail because the motion was never ruled on by the trial court. Therefore, the notice requirements of the rule were never triggered. *Espinosa,* 853 S.W.2d at 39 (motion directed to Court that is not ruled on is insufficient request under Rule 404(b)); *see also Valle v. State,* 950 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (citing *Espinosa,* 853 S.W.2d at 39).

We overrule point of error seven.

### Hearsay

Appellant complains in his eighth and ninth points of error that the trial court erred in permitting hearsay testimony of Marva Sears and Tara Johnson. Appellant again conclusorily asserts that the admission of this testimony violated both federal and state law. Because appellant did not separately brief any federal violation, point of error eight is waived. *Etheridge,* 903 S.W.2d at 21 n. 1.

Sears testified that she overheard appellant and several other individuals "rapping." In the lyrics of this "rap," an individual other than appellant sung about the shooting of a Pearland white woman. Johnson testified that she overheard a discussion appellant was involved in sometime before Christmas.[1] She testified that she overheard one of the parties to the conversation say they went to Brazoria County.

Appellant again conclusorily asserts that the admission of this testimony violated both federal and state law. Because appellant did not separately brief any federal violation,

1. The robbery occurred on December 19, 1993.

point of error eight is waived. *Etheridge,* 903 S.W.2d at 21 n. 1.

The testimony of both witnesses is very unclear as to whom and what the witnesses were referring when they were describing what was said, making a determination of whether the testimony was hearsay or not virtually impossible. Assuming, without deciding, that the complained-of testimony was improperly admitted, our examination of the record in its entirety leads us to conclude that the alleged error did not affect a substantial right of appellant. Tex.R.App. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King,* 953 S.W.2d at 271 (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

The testimony of the two witnesses was brief and unclear. Numerous eyewitnesses identified appellant as the perpetrator. The witnesses had ample opportunity to observe appellant during the robbery and identified him only a short period of days later. In addition, the prosecutor did not emphasize Sears's or Johnson's testimony whatsoever, nor did he raise or refer to it again.

Even if the jurors considered Sears's and Johnson's testimony, it is unlikely they would have placed substantial weight on it. Accordingly, the introduction of this testimony was not "substantial or injurious." *King,* 953 S.W.2d at 273 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253). We overrule appellant's ninth point of error.

### Motion to Suppress

In his tenth point of error, appellant complains that the trial court erred in denying his motion to suppress certain identification testimony. In his eleventh point of error, appellant complains that the trial court erred in denying his motion for new trial requesting the suppression of this identification testimony.

A defendant who claims on appeal that a trial court erred in allowing identification testimony has a difficult and heavy burden. *Herrera v. State,* 682 S.W.2d 313, 318 (Tex.Crim.App.1984). The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse of discretion. *Long v. State,* 823 S.W.2d 259, 277 (Tex. Crim.App.1991). At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Brooks v. State,* 830 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, no pet.). The trial court may choose to believe or disbelieve any or all of a witness' testimony. *Green v. State,* 934 S.W.2d 92, 98 (Tex.Crim.App.1996).

On appellate review, the evidence presented at the suppression hearing is viewed in the light most favorable to the trial court's ruling to determine whether the trial court abused its discretion in denying the motion to suppress. *Whitten v. State,* 828 S.W.2d 817, 820 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). We are not at liberty to disturb any finding that is supported by the record. *Green,* 934 S.W.2d at 98; *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim. App.1990). Additionally, unless appellant shows by clear and convincing evidence that the complaining witnesses' identification was irreparably tainted, this Court will not reverse a conviction on these grounds. *Herrera,* 682 S.W.2d at 318.

Appellant first argues that because the police had informed several witnesses that a suspect had been developed, a later photo line-up was impermissibly suggestive. However, the witnesses were told that they were under no obligation to pick anyone out of the line-up and that the suspect may or may not be present. The fact that an eyewitness knows that the police have developed a suspect does not by itself make a line-up impermissibly suggestive so as to give rise to a substantial likelihood of irreparable misidentification. *Webb v. State,* 760 S.W.2d 263, 272 (Tex.Crim.App.1988). Were this fact alone sufficient to render the lineup impermissibly suggestive, precious few lineups would meet constitutional muster. *Id.*

Appellant also conclusorily asserts that having several witnesses together at the same time during the drawing of the composite sketch was impermissibly suggestive. Appellant does not state how having the witnesses together was suggestive, nor does he cite any case authority to support this proposition. No error has been preserved for review. Tex.R.App. P. 38.1(h).

Appellant next complains that having several witnesses together at the time of a live line-up was impermissibly suggestive. The mere fact that the eyewitnesses viewed the line-up together is not impermissibly suggestive. *Burns v. State,* 923 S.W.2d 233, 237–38 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). Further, at the time of the live line-up, the witnesses were instructed that the suspect may or may not be in the line-up, and if they did recognize someone to remain silent until they were removed from the room. Officer Davidson was present during the entire line-up, and testified that the witnesses complied with his instructions and remained silent until removed. Appellant has failed to carry his burden with regard to the live line-up.

Because the trial court did not err in denying appellant's motion to suppress, it did not err in denying the motion for new trial on this same basis. Tex.R.App. P. 21.3(b)

We overrule appellant's tenth and eleventh points of error.

We affirm the judgment.